COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-303-CR
  
  
CHARLES 
FRAUSTO                                                              APPELLANT
  
  
V.
 
  
THE 
STATE OF TEXAS                                                                  STATE
 
  
------------
 
FROM 
THE 396TH DISTRICT COURT OF TARRANT COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
        Upon 
his plea of guilty, a jury convicted Appellant Charles Frausto of two counts of 
serious bodily injury to a child. The jury found the allegation that Appellant 
used a deadly weapon in the commission of the offenses to be true. The trial 
court sentenced Appellant to twenty-five years’ confinement in the 
Institutional Division of the Texas Department of Criminal Justice. On appeal, 
Appellant contends in two issues that the trial court erred in overruling his 
objections to the State’s jury argument. Because we hold that the trial court 
did not reversibly err, we affirm the trial court’s judgment.
        Appellant’s 
confession was admitted into evidence. Appellant stated that he came home from 
work during his break at 2:00 a.m. on the day the injuries occurred. He claimed 
that he found the complainant A.R., his wife’s two-and-a-half-year-old 
daughter, lying in bed with his wife. Appellant picked A.R. up, squeezing her 
rib cage too hard. He slung her over his shoulder and threw her down on her own 
bed. Appellant went back to work and returned home at 7:15 a.m., about thirty 
minutes before his wife left for work.
        After 
his wife left, Appellant lay in bed with his eleven-month-old son. He was 
awakened by his son’s jumping on him. Appellant got up and yelled to A.R. to 
get up. He claimed that he met her at the top of the stairs, where he shoved 
her, causing her to fall backward down the stairs and to hit her head against 
the corner of the wall. A.R. slid down the stairs, hitting her lower back. 
Downstairs, Appellant put A.R. in her high chair. He complained that she was 
“stuffing her face.” He grabbed her jaw and told her to spit out her food. 
Then he yanked her out of her chair and threw her over his knee, spanking her.
        When 
A.R. began to back away from him, he hit her in the stomach, knocking the wind 
out of her and causing her to fall, hitting her head on the corner of the metal 
and glass coffee table. Appellant picked A.R. up and put her in time out, where 
she sat while he went back to sleep. A.R. woke Appellant up and told him she had 
hit her head. Appellant noticed that her eyebrow was swollen and turning purple. 
Appellant stated that he believed that lack of sleep had caused stress that led 
to the abuse of A.R.
        At 
trial, the State’s expert, Dr. Coffman, testified that the injuries to A.R. 
caused her to go into life-threatening shock. He testified that the injuries, 
including a lacerated liver, a skull fracture, and multiple bruises all over her 
body, were not consistent with Appellant’s hitting her with an open palm as 
Appellant had claimed, but with a fist. Additionally, the doctor testified that 
the head injuries were not consistent with a fall, but with the child’s head 
being held and slammed against something. Finally, the doctor and police 
officers who testified at trial stated that a fist could be used as a deadly 
weapon.
        Appellant 
argues on appeal that the trial court committed reversible error in overruling 
his objections to the State’s jury argument. He points out that the only issue 
before the jury was whether he had used his hands as a deadly weapon.
        Appellant’s 
trial counsel argued, “He pleaded guilty to the offense. He has remorse.” He 
then pointed out that Appellant had two children and that A.R. had asked for 
Appellant at the hospital. He argued that the State was asking the jury “to 
believe that the same hands that [Appellant] used to strike and spank [A.R.] [we]re 
a deadly weapon when [Appellant had] used the same hands to take the child to 
the hospital for treatment.” He argued that Appellant had been through enough 
and that he would be punished. He argued:
  
He 
did not use a deadly weapon. And deadly weapon means deadly weapon. The Court 
defines it for you here, but a weapon is a weapon. And these words are defined 
for you. There’s no firearm. There’s no club. There’s no device, apparatus 
of any kind. It’s just hard for me to conceive that a hand attached to an arm 
attached to a brain is a deadly weapon or intended to be used as such.

 
Counsel 
also argued that the State had brought no witnesses who had seen the child since 
she had been to the hospital, and that the jurors did not know her condition 
now. He argued that the State had not tried to prove her current condition. 
Then, despite Appellant’s having admitted that he had caused seriously bodily 
injury to A.R. and despite the undisputed fact that A.R. had arrived at the 
hospital with two life-threatening injuries, his trial counsel argued contrary 
to the undisputed facts by stating:
  
If 
you have substantial questions about what the facts are regarding the nature and 
extent of the injuries that [A.R.] suffered, if you have to speculate on what 
those injuries are, you have a reasonable doubt. I ask that you give that doubt 
to the [Appellant] and let him accept the punishment as assessed by the Court 
for his assault on this child.

  
        The 
State responded by telling the jurors that they could look at the picture of 
Appellant’s red knuckles and see how they would match the bruises on A.R.’s 
abdomen, just as the doctor and detective had testified. The State discussed the 
nature and extent of the injuries, and the amount of medical intervention 
necessary to save A.R.’s life. The State then argued, “He knew he was 
caught, and that’s why he pled guilty, folks.” The State continued, “And I 
think that . . . what’s going on in the courtroom here today is an attempt by 
[defense counsel] to say, well, he’s already taken responsibility, don’t 
hold him fully responsible, give him the benefit of the doubt on the deadly 
weapon because he pled guilty because he’s a good guy.” The State responded 
to Appellant’s trial counsel’s tactics by stating, “No. He pled guilty 
because he was caught.”
        The 
State then began the arguments of which Appellant complains on appeal. The 
prosecutor argued, “We’ve got a statement and we’ve got plenty of evidence 
to show you beyond a reasonable doubt that he’s guilty. And if he had pled not 
guilty, that’s exactly what we would have done. And I don’t have any 
doubt—.“ Defense counsel then objected that the statement was “speculative 
and not based on the record.” The objection was overruled and the State 
continued to argue, “And I don’t have any doubt that with the quantity and 
the quality of the evidence—.” Defense counsel objected again to the 
prosecutor “testifying as to what she—testimony she would have brought had 
the plea been otherwise.” That objection was also overruled. The State 
continued, “—[w]ith the quantity and the quality of evidence in this case, 
that a jury, any reasonable jury could find beyond a reasonable doubt that this 
man did it in addition to the deadly weapon.”
        The 
State argues that Appellant failed to preserve his complaint for review, 
contending that his objection at trial was not the same as his complaint on 
appeal. We disagree. To preserve a complaint for appellate review, the 
complaining party must lodge a timely and specific objection in the trial court.[2]  The purpose of the contemporaneous objection rule is 
(1) to notify the trial judge of the basis of the objection to allow the trial 
court to rule, and (2) to afford the opponent an opportunity to cure the 
complained-of defect.[3]  Additionally, the 
complaint on appeal must comport with the objection lodged in the trial court.[4]
        On 
appeal, Appellant argues that the first complained-of argument is outside the 
record. This is specifically the objection at trial. The second objection, while 
less clear cut, was clearly sufficient to put the trial court on notice that 
Appellant was complaining of matters outside the record when taken in 
conjunction with the previous objection made only seconds before. The complaint 
that the prosecutor was testifying to what evidence she would have brought had 
the plea been otherwise is a complaint that the argument is outside the record.
        We 
do not condone Appellant’s decision to argue contrary to his plea. Even though 
the State was responding to Appellant’s argument that the jury should examine 
whether it had a reasonable doubt as to his guilt in determining the deadly 
weapon issue, however, to the extent that the prosecutor was referring to 
evidence outside the record, injecting her opinion of the evidence, and 
speculating about what the State would have done had Appellant not pled guilty, 
the State’s arguments were improper.[5]  We 
therefore hold that the trial court erred in overruling Appellant’s 
objections.
        If 
a jury argument exceeds the bounds of proper argument, the trial court’s 
erroneous overruling of a defendant’s objection is not reversible error unless 
it affected his substantial rights.[6]  In 
determining whether an appellant’s substantial rights were affected, we 
consider:  (1) the severity of the misconduct (that is, the prejudicial 
effect of the prosecutor’s remarks), (2) curative measures, and (3) the 
certainty of conviction absent the misconduct.[7] 
        As 
we have already suggested, Appellant’s trial counsel invited the 
prosecutor’s improper response by arguing contrary to Appellant’s guilty 
plea. Further, the evidence in the record supports the deadly weapon finding. 
Appellant admitted his guilt of the offense. He described striking the child, 
knocking her down the stairs, throwing her into her bed, and hitting her in the 
stomach. The jury had the opportunity to view photographs depicting the 
child’s injuries. Dr. Coffman testified that the injuries were consistent with 
Appellant’s hitting the child with his fist. The uncontested medical evidence 
showed that A.R.’s kidneys had been failing, that she was going into shock, 
and generally that her body was shutting down when she received medical 
treatment. The evidence also shows that she could easily have died from the 
injuries. Appellant admitted that he used his hand to inflict the injuries. 
Further, it would be difficult to conclude that the State’s arguments about 
Appellant’s guilt could have affected the jury’s determination of the sole 
issue before it, whether Appellant used his hand as a deadly weapon. Appellant 
does not contend that the argument influenced the trial court, who assessed a 
sentence of twenty-five years, well within the range of punishment for this 
offense.[8]   We therefore hold that the 
error did not affect Appellant’s substantial rights and is not reversible.
        We 
overrule Appellant’s two issues on appeal and affirm the trial court’s 
judgment.
  
  
                                                          LEE 
ANN DAUPHINOT
                                                          JUSTICE
 
  
PANEL 
B:   LIVINGSTON, DAUPHINOT, and WALKER, JJ.
DO 
NOT PUBLISH
Tex. R. App. P. 47.2(b)
 
DELIVERED: 
April 1, 2004


NOTES
1.  
See Tex. R. App. P. 47.4.
2.  
See Tex. R. App. P. 33.1(a).
3.  
Janecka v. State, 823 S.W.2d 232, 243-44 (Tex. Crim. App. 1990); Zillender 
v. State, 557 S.W.2d 515, 517 (Tex. Crim. App. 1977).
4.  
Coffey v. State, 796 S.W.2d 175, 180 (Tex. Crim. App. 1990); Judd v. 
State, 923 S.W.2d 135, 138 (Tex. App.—Fort Worth 1996, pet. ref’d).
5.  
See McKenzie v. State, 617 S.W.2d 211, 221 (Tex. Crim. App. 1981).
6.  
Tex. R. App. P. 44.2(b); Martinez v. State, 17 
S.W.3d 677, 692-93 (Tex. Crim. App. 2000); Mosley v. State, 983 S.W.2d 
249, 259 (Tex. Crim. App. 1998) (op. on reh’g), cert. denied, 526 U.S. 
1070 (1999).
7.  
Martinez, 17 S.W.3d at 692-93; Mosley, 983 S.W.2d at 259.
8.  
See Tex. Penal Code Ann. § 22.04(a)(1), (e) (Vernon 2003) 
(providing that knowingly causing serious bodily injury to a child is a first 
degree felony); id. §12.32(a) (providing that confinement can range from 
five to ninety-nine years or life).