IN THE COURT OF CRIMINAL APPEALS


OF TEXAS







NO. 904-02






CARROLL DWAYNE YOUNG, Appellant



v.



THE STATE OF TEXAS






ON DISCRETIONARY REVIEW


FROM THE FIRST COURT OF APPEALS


HARRIS COUNTY






 Womack, J., delivered the opinion of the Court, in which Keller, P.J., and
Keasler, Hervey, Holcomb, and Cochran, JJ., joined. Meyers, J., filed
a dissenting opinion, in which Price and Johnson, JJ., joined. Johnson,
J., filed a dissenting opinion, in which Meyers and Price, JJ., joined.



 This case requires us to decide two issues: May a defendant preserve error for
appeal by moving for a mistrial without first making an objection and requesting an
instruction to disregard? If he may, is it error to overrule such a motion for mistrial when
an instruction to disregard could not have cured the harm of the objectionable event? Our
answer to each question is, yes.

 The appellant was convicted of aggravated sexual assault and sentenced to 75 years'
imprisonment and a $5,000 fine. The record shows that the following exchanges occurred
during voir dire examination of the prospective jurors:

THE COURT: Is it Mrs. Valdez?


VENIREPERSON: Yeah. I'm not sure if this is the appropriate time. I've been
trying to figure out when it is. But my background, my work --
I've worked a lot with inner city youth in a program and I've
worked with a lot of sexual assault children. I just don't think I
can be fair. And he needs to have a fair person because I've
worked on the children's side.


THE COURT: I understand. Are you saying because of that, when you say you
can't be fair, does that mean that if the State doesn't prove their
case beyond a reasonable doubt, you would find him guilty
anyway?


VENIREPERSON: It's like the policeman that you talked about that comes in with
a certain level of experience or knowledge. I just -- I feel that
I'm going to be weighted in one way. And I don't think I can be
fair.


THE COURT: I understand that. And I'm trying to pinpoint. When you say you
can't be fair, that's kind of global. I'm trying to figure out --
excuse me -- I'm trying to see if -- we want to pinpoint you.
When you say you can't be fair, what do you mean when you
say you can't be fair?


VENIREPERSON: Well, of course, I don't know any details. And it depends on
how old the child was. But what I have found in 25 to 30 years
of this work is that usually when a child says something has
been done like this, usually the majority of cases I've worked
with, it's the truth.


THE COURT: All right.


VENIREPERSON: So what I'm trying to say -- 


THE COURT: Excuse me. Let me stop you there. Are you saying in your 25
to 30 years of work you've never had a situation where a child
is found not to be telling the truth?


VENIREPERSON: Right. Correct.


THE COURT: So, that's never happened in your 25 or 30 years?


VENIREPERSON: No. I'm saying that -- that, yes, what you said is true.


DEFENSE COUNSEL: Your Honor, at this time I'm going to move for a mistrial. This
witness has polluted the jury panel.


THE COURT: Excuse me, sir. Approach the bench, please.


[At the bench, on the record.]

THE COURT: Yes?


DEFENSE COUNSEL: I move for a mistrial because this witness has been allowed to
state in her 25 years, 25 years of work -- 


THE COURT: Mr. Smith [defense counsel], will you keep your voice down?
That's why I asked you to approach the bench.


DEFENSE COUNSEL: That's the point of the motion. The entire jury panel -- 


THE COURT: I'm asking you to keep you voice down, sir.


DEFENSE COUNSEL: Yes, Your Honor. I was looking to see if the jury -- if the court
reporter can hear me. I'm moving for a mistrial because this
witness has been allowed to testify that in her 25 years I
worked with children, whenever a child makes an accusation,
that that is generally the truth. That witness should have been
brought up here, allowed to say that in front of you without
polluting the jury panel.


THE COURT: And that's denied.


*********

[In the jury's presence.]


THE COURT: Ma'am, Ms. Valdez, are you saying that in your 25 to 30 years
you have had occasion where a child was found not to be telling
the truth; is that correct?


VENIREPERSON: Yes, that's what I said.


THE COURT: And so, my question to you then is are you saying that should
the State's evidence not convince you beyond a reasonable
doubt, that because of your experience in this area you would
go ahead and find the person guilty anyway?


VENIREPERSON: No. That's not what I'm saying. And I don't know how to
express myself.


THE COURT: Okay. I'll tell you what. I'm going to let you think about it.
Excuse me. I'll let you think about it and we will come back to
it.


 The court later granted the appellant's challenge for cause against Ms. Valdez.

 The court of appeals reversed, holding, "An instruction to disregard could not have
cured the prejudice resulting from: (1) the impact of the venirewoman's improper opinion
statement, combined with the emphasis given to it by the trial court's double-repetition of
the statement; and (2) the fact that the prejudicial opinion addressed precisely the crucial
issue of the child complainant's credibility in an essentially two-witness case." (1)

 We previously have explained the purpose of requiring a complaint to the trial court
in order to preserve error for appellate review. "The generally acknowledged policies of
requiring specific objections are two-fold. First, a specific objection is required to inform
the trial judge of the basis of the objection and afford him the opportunity to rule on it.
Second, a specific objection is required to afford opposing counsel an opportunity to
remove the objection or supply other testimony." (2) "Stated more broadly, objections
promote the prevention and correction of errors. When valid objections are timely made
and sustained, the parties may have a lawful trial. They and the judicial system are not
burdened by appeal and retrial. When a party is excused from the requirement of objecting,
the results are the opposite." (3)

 A defendant's complaint may take three forms: (1) a timely, specific objection, (2) a
request for an instruction to disregard, and (3) a motion for a mistrial. Each of these
methods furthers the policies of preventing and correcting errors and conserving judicial
resources, but in different ways and to varying degrees. An objection serves as a preemptive
measure. Because it informs the judge and opposing counsel of the potential for error, an
objection conserves judicial resources by prompting the prevention of foreseeable, harmful
events. 

 The other two methods of complaint are corrective measures. An instruction to
disregard attempts to cure any harm or prejudice resulting from events that have already
occurred. Where the prejudice is curable, an instruction eliminates the need for a mistrial,
thereby conserving the resources associated with beginning the trial process anew. Like an
instruction to disregard, a mistrial serves a corrective function. However, the class of
events that require a mistrial is smaller than that for which a sustained objection or an
instruction to disregard will suffice to prevent or correct the harm. A grant of a motion for
mistrial should be reserved for those cases in which an objection could not have prevented,
and an instruction to disregard could not cure, the prejudice stemming from an event at trial
-- i.e., where an instruction would not leave the jury in an acceptable state to continue the
trial. Therefore, a mistrial conserves the resources that would be expended in completing
the trial as well as those required for an appeal should a conviction occur.

 Because the objection, the request for an instruction to the jury, and the motion for
mistrial seek judicial remedies of decreasing desirability for events of decreasing
frequency, the traditional and preferred procedure for a party to voice its complaint has
been to seek them in sequence -- that is, (1) to object when it is possible, (2) to request an
instruction to disregard if the prejudicial event has occurred, and (3) to move for a mistrial
if a party thinks an instruction to disregard was not sufficient. However, this sequence is
not essential to preserve complaints for appellate review. (4) The essential requirement is a
timely, specific request that the trial court refuses. (5)

 In most instances, an objection will prevent the occurrence of the prejudicial event,
and the failure to make a timely, specific objection prevents appellate review. If an
objectionable event occurs before a party could reasonably have foreseen it, the omission
of objection will not prevent appellate review. The reasons are clear. It is not possible to
make a timely objection to an unforeseeable occurrence, and an objection after an event
occurs cannot fulfill the purpose of the objection, which is to prevent the occurrence of the
event.

 Similarly, the request for an instruction that the jury disregard an objectionable
occurrence is essential only when the such an instruction could have had the desired effect,
which is to enable the continuation of the trial by a impartial jury. The party who fails to
request an instruction to disregard will have forfeited appellate review of that class of
events that could have been "cured" by such an instruction. But if an instruction could not
have had such an effect, the only suitable remedy is a mistrial, and a motion for a mistrial is
the only essential prerequisite to presenting the complaint on appeal. Faced with incurable
harm, a defendant is entitled to a mistrial and if denied one, will prevail on appeal.

 Accordingly, when a party's first action is to move for mistrial, as this appellant's
was, the scope of appellate review is limited to the question whether the trial court erred in
not taking the most serious action of ending the trial; in other words, an event that could
have been prevented by timely objection or cured by instruction to the jury will not lead an
appellate court to reverse a judgment on an appeal by the party who did not request these
lesser remedies in the trial court. Limited as this scope of appellate review may be, such an
appellate review is available to such a party.

 We recognize the potential for abuse of a rule allowing a motion for mistrial
without a preceding objection or request for instruction to disregard. If a party delays
motion for mistrial, and by failing to object allows for the introduction of further
objectionable testimony or comments and greater accumulation of harm, the party could no
more rely on the untimely motion for mistrial than on an untimely objection. This
appellant's motion for mistrial was not so delayed.

 In this case, the appellant moved for mistrial once it became apparent that the judge
was beginning to focus her questions on the venire member's comments regarding her 25
to 30 years of experience and the truthfulness of children. The appellant complained,
among other things, about the comments made during the portion of voir dire that is
presented above. Specifically, the appellant argued that the trial court erred in denying his
motion for mistrial because Ms. Valdez's statements were prejudicial and were repeated
and emphasized by the trial court in the presence of the jury panel. (6) The court of appeals
agreed:

 Mistrial is the appropriate remedy when, as here, the objectionable events "are so
emotionally inflammatory that curative instructions are not likely to prevent the jury
from being unfairly prejudiced against the defendant." Although appellant's counsel
did not pursue the familiar procedure of objection and request for an instruction to
disregard before moving for a mistrial, his action forced the trial court to choose
between letting the remark stand and declaring a mistrial; moreover, appellant's
motion for mistrial preserved error. The quoted colloquy constituted a record that
fully demonstrated harm. An instruction to disregard could not have cured the
prejudice resulting from: (1) the impact of the venirewoman's improper opinion
statement, combined with the emphasis given to it by the trial court's double-repetition of the statement; and (2) the fact that the prejudicial opinion addressed
precisely the crucial issue of the child complainant's credibility in an essentially
two-witness case. (7)


 For the reasons discussed above, the court of appeals was correct to hold that the
appellant preserved error for appeal.

 We do not agree with the court's conclusion regarding the curability of the harm
flowing from the prospective juror's comments. Assuming that the comments were indeed
prejudicial, it is not clear from the record that a timely objection, immediately following
the Ms. Valdez' first statement, would not have prevented the lengthy exchange between the
Ms. Valdez and the judge and the "emphasis" on that initial statement with which the court
of appeals was so concerned.

 Furthermore, we believe that an instruction to disregard would have cured the
prejudice, if any, for several reasons. First, even without an instruction from the court, it
seems probable that other members of the venire, drawing on their own experiences
regarding the truth-telling tendencies of young children, would question the veracity of Ms.
Valdez' statements that she had never known a child with whom she worked to lie. An
instruction to disregard may have served only to underscore any incredulity that the other
prospective jurors already felt. Second, Ms. Valdez ultimately was challenged for cause by
the appellant and was dismissed. Her departure at such an early stage in the trial may have
mitigated any prejudice caused by her remarks, and an instruction to disregard, combined
with her absence from the remainder of the trial, may have been easier for the remaining
prospective and ultimately selected jurors to follow. Also, as the State points out, Ms.
Valdez was not a witness in the trial and had not been presented as an expert. The record
does not reflect any discussion of her educational background, the type of program in
which she worked, or the specific type of work that she performed. Given in the minimal
information that the other prospective jurors had about Ms. Valdez, it is reasonable to
believe that an instruction to disregard her remarks would have cured any lingering
prejudice.

 While we accept this much of the State's argument, we must address another aspect,
which exposes an ambiguous portion of the record. In support of its argument regarding
curability, the State refers to the apparent "self-contradictory" remarks of Ms. Valdez.
Specifically, the State points to the following exchange:

 THE COURT: Ma'am, Ms. Valdez, are you saying that in your 25 to 30 years
you have had occasion where a child was found not to be
telling the truth; is that correct? (emphasis added)


VENIREPERSON: Yes, that's what I said.


 We recognize the patent contradiction between Ms. Valdez' answer to this question
and the ones asked of her only minutes before. We attribute this contradiction to one of
three things: (1) The record is accurate and Ms. Valdez contradicted her previous
statement; (2) the record is accurate, but the court intended to say "you have not had
occasion," Ms. Valdez understood the court's intended meaning, and she answered
consistently with her prior comments; or (3) the court actually asked Ms. Valdez if she had
"not had occasion" and Ms. Valdez answered accordingly, but the court reporter mistakenly
omitted the critical word from the record of the court's question. We believe it reasonable
to conclude that either the second or the third scenario is what actually occurred. Ms.
Valdez' response, "Yes, that is what I said," indicates that the court's question was a
reiteration of her previous responses -- that in 25 to 30 years she had not known a child to
lie. Therefore, the State's argument that the apparently "self-contradictory" comments tend
to make the harm curable does not factor into our analysis.

 Because an instruction to disregard Ms. Valdez' comments would have cured any
resulting harm, the trial court did not err in denying the appellant's motion for mistrial. The
appellant chose not to object to the comment or to request an instruction. Instead, he chose
to preserve error by immediately moving for a mistrial to which he was not entitled,
foreclosing the opportunity to cure any prejudice that may have contributed to his
conviction.

 The court of appeals did not err in holding that, despite his failure to object and to
request an instruction to disregard before moving for a mistrial, the appellant preserved
error for appeal. However, the court was incorrect in its conclusion that an instruction to
disregard would not have cured the prejudice caused by the prospective juror's opinion
statements and that, therefore, the trial court erred in denying the appellant's motion for
mistrial.

 Because we hold that the trial court did not err, we do not reach the third ground for
review, which was whether the court of appeals conducted a proper harm analysis. The
judgment of the court of appeals is reversed, and the cause is remanded for consideration
of the appellant's remaining points of error.


En banc.

Delivered June 9, 2004.

Publish.
1. Young v. State, 73 S.W.3d 482, 485 (Tex. App. -- Houston [1st Dist.] 2002) (en banc).
2. Zillender v. State, 557 S.W.2d 515, 517 (Tex. Cr. App. 1977).
3. Saldano v. State, 70 S.W.3d 873, 887 (Tex. Cr. App. 2002).
4. See Fuller v. State, 827 S.W.2d 919, 926 (Tex. Cr. App. 1992).
5. "As a prerequisite to presenting a complaint for appellate review, the record must show that:


 (1) the complaint was made to the trial court by a timely request, objection, or
motion that:


 (A) stated the grounds for the ruling that the complaining party sought from
the trial court with sufficient specificity to make the trial court aware of
the complaint, unless the specific grounds were apparent from the
context; and


 (B) complied with the requirements of the Texas Rules of Civil or Criminal
Evidence or the Texas Rules of Civil or Appellate Procedure; and


 (2) the trial court:


 (A) ruled on the request, objection, or motion, either expressly or implicitly;
or


 (B) refused to rule on the request, objection, or motion, and the
complaining party objected to the refusal." Tex. R. App. P. 33.1(a).
6. See Young, 73 S.W.3d, at 483.
7. Id. at 485 (citations omitted).